IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Kimberly Rowe,<br><br>      Plaintiff,<br><br>vs.<br><br>Red Lobster Restaurants, LLC,<br><br>      Defendant. | C.A. No. 4:21-cv-975<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1. This action relates to plaintiff's employment with and termination from Red Lobster Restaurants, LLC (Red Lobster). She is making federal claims under: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the Equal Pay Act, 29 U.S.C. § 203(d) and supplemental claims under the Missouri Human Rights Act. RSMo 213.010, et seq. (2016).

### Parties

2. Plaintiff is a former employee of Red Lobster.

3. Plaintiff is female.

4. Defendant Red Lobster is a corporation doing business in the Eastern District of Missouri.

5. At all times material to this lawsuit, defendant had at least fifteen employees within the State of Missouri.

### Jurisdiction and Venue

6. This court has jurisdiction over plaintiff's federal claims based on 28 U.S.C. 1331 and 1343 and 42 U.S.C. § 2000e-(f)(3). This court has supplemental jurisdiction over plaintiff's

1

claims under the Missouri statute because plaintiff's claims under the Missouri Human Rights Act are so related to her claims under Title VII and the Equal Pay Act that they form part of the same case or controversy under Article III of the U.S. Constitution.

7. Plaintiff's cause of action arises out of conduct in St. Louis County, Missouri so venue is proper.

**Administrative Facts for Title VII and Human Rights Act Claims**

8. On or about August 8, 2019, plaintiff timely filed a Charge of Discrimination with the Missouri Human Rights Commission (MCHR) and the Equal Employment Opportunity Commission (EEOC). Her Charge, No. 560-2019-01282, is Exhibit 1.

9. The EEOC issued a Notice of Right to Sue on May 28, 2021. Exhibit 2.

10. The MCHR issued a Notice of Right to Sue on July 1, 2021. Exhibit 3.

11. Plaintiff filed this lawsuit within 90 days of her receipts of Exhibit 2 and 3.

**Facts**

**A.  Initial Employment and Resignation**

12. Plaintiff began working for defendant in August 2010 at the Alton, Illinois store.

13. In around April 2016, plaintiff resigned her employment with defendant, having secured a employment with a different employer.

**B.  June 2016 Hiring and Employment History**

14. In around June 2016, one of defendant's manager's contacted plaintiff, asking plaintiff to work for defendant, this time at the Fairview Heights restaurant.

15. Plaintiff accepted the new offer of employment and, in around June 2016, began working for defendant as a server in Fairview Heights.

16. Between the second time she started working for Red Lobster and the end of that employment, plaintiff worked for defendant continually in various jobs, including server, service professional, trainer, and bartender throughout a District.

17. The District consisted of restaurants in eastern Missouri, southern Illinois, and, later Paducah, Kentucky, all under the management of a single District Manager.

18. The District Manager rotated among the stores in the District and did not have an office or base of his own. He controlled hiring, firing, salaries, and other terms and conditions of employment.

19. In around March 2018, Samir Abdallah was the District Manager responsible for the District described in Paragraph 17, above.

20. In around March 2018, Abdallah told plaintiff that he was promoting her to manager in-training and that she would be paid $40,000 per year as a manager.

21. Plaintiff began the manager-in-training at the South Lindbergh Red Lobster. The South Lindbergh Red Lobster was also in Abdallah's District.

22. When plaintiff completed her three-month training, Abdallah assigned plaintiff to be Manager in the Bridgeton restaurant, also in his District.

## C.  Salary

23. Defendant paid similarly situated men more money than it paid plaintiff even though plaintiff and the men were performing substantially equal work considering the skill, effort, and responsibilities of the positions. Upon information and belief the men defendant included, but were not necessarily limited to: Todd Holder and Braden Garet.

24. Plaintiff and the similarly situated men performed manager and manager-in-training duties in the same establishment under the Equal Pay Act in that a central administrative unit or employee controlled plaintiff and the male managers. The central administrative unit or employee was the District in which plaintiff worked, as controlled by the District Manager.

### D.  Abdallah's Handling of Complaints About Corrier

25. By September 2018, Abdallah had assigned plaintiff to the position of Manager at the Bridgeton Red Lobster.

26. In around September 2018, after being approached by other female employees, plaintiff told a fellow that Bridgeton Manager that General Manager Steve Corrier had sexually harassed them.

27. Corrier is male.

28. The other women had complained about Corrier to Abdallah previously, but Abdallah had ignored them until plaintiff made her complaint.

29. The next day, Abdallah met with plaintiff at the Bridgeton Red Lobster where she told Abdallah about Corrier's conduct. Abdallah met with Corrier separately and then had plaintiff sit in a small booth with the two of them. Abdallah said that Corrier admitted there may have been some unwanted touching and an inappropriate comment. He told Corrier that it could not happen again. Corrier apologized and asked plaintiff if they were okay now.

30. The next day, Abdallah's supervisor, the Regional Manager, instructed plaintiff to write a statement about Corrier's conduct, which she did.

31. Abdallah then tried to get plaintiff to change her statement given Corrier's position about what had happened. Plaintiff refused.

32. Defendant discharged Corrier the next day.

### E.  Plaintiff asks another manager to help with a bandage on her spider bite

33. In February 2019, a spider bit plaintiff on the side of the lower back/ upper hip area of her body.

34. Plaintiff went to the hospital for medical treatment, which included oral and topical antibiotics.

35. Plaintiff told Abdallah about the bite and her hospital visit.

36. The day after plaintiff went to the hospital, around February 8, 2019, when plaintiff was at work, the bite ruptured and was oozing onto plaintiff's clothes.

37. Manager Amy Weidman accompanied plaintiff into an office and helped her bandage the bite.

38. Server Tanner Witzel, who is also a nurse, came into the closed office and looked at the bite as well.

39. Witzel and Weidman were the only two employees who assisted plaintiff with the bite at work.

### F.  Plaintiff reports employee's harassing conduct

40. On around March 21, 2019, while plaintiff was sitting at her desk, line cook Demetrius Henley came into her office, stood behind her, slid his hand down the front of her shirt, and said, "If you need anything let me know."

41. Later that day, Henley grabbed plaintiff by her waist and pulled her towards him. He later told her she had an ass and curves.

5

42. The next day, plaintiff reported Henley's conduct to Bridgeton General Manager Greg Lang. In a doubting tone, Lang questioned plaintiff about whether Henley had really done what plaintiff had complained about. Plaintiff said Henley needed instruction on the sexual harassment policy.

43. The day after she reported Henley's conduct to Lang, Abdallah came to the store and instructed plaintiff to sit with him and Lang in a small booth in the open part of the restaurant, while customers were present. Abdallah told plaintiff to write happened with Henley. He told her to hurry since he had other places to visit.

### G.  Abdallah says "corporate" decided it was he said-she said

44. In what defendant claimed was its internal investigation of plaintiff's allegations, Henley and plaintiff wrote statements. Exhibits 4 and 5 are the statements. Defendant produced these statements to the EEOC.

45. Henley wrote: "Kim…said I was…caressing her in the office, but I was not." Exhibit 4. Plaintiff had not written that Henley had caressed her. Exhibit 5.

46. Henley could not have known to deny caressing plaintiff unless he had, in fact, caressed plaintiff.

47. Yet by March 25, two days after Henley denied "caressing" plaintiff, Abdallah claimed "corporate" decided that it was Rowe's word against Henley's. Defendant decided that it would terminate Henley only if he did something again.

### H.  Defendant begins investigating plaintiff

48. The next day, plaintiff opposed defendant's handling of the investigation, including her concern with and opposition to the conclusion.

6

49. Defendant then had employees prepare negative statements about plaintiff.

### I. Defendant suspends and fires plaintiff

50. On March 31, Abdallah suspended plaintiff.

51. Abdallah met with plaintiff to tell her he was suspending her. He told plaintiff that he was suspending her because she had taken a male employee into the office, shut the door, pulled down her pants and underwear, and had the employee change the bandaid on her spider bite. Plaintiff denied this and asked Abdallah who had accused her of this conduct. Abdallah refused to tell her.

52. Plaintiff told Abdallah that the only people to have seen the bite were Amy Weidman, a Manager, and Tanner Witzel.

53. Abdallah got a statement from Witzel who corroborated plaintiff's account of the spider bite, including its location on plaintiff's body. Witzel said the bite was on plaintiff's "lower back." Abdallah did not speak to Manager Amy Weidman about the bite.

54. Within a few days, defendant fired plaintiff, telling her it was because she showed the bug bite to an employee.

### COUNT I Title VII Sex Discrimination

55. Paragraphs 1 through 54 are incorporated as though fully stated in this Count.

56. Plaintiff filed a timely administrative charge and filed this lawsuit within 90 days of her receiving her notice of right to sue.

57. Defendant discriminated against plaintiff because of her sex, in violation of Title VII, 42 U.S.C. § 2000e-2, in the payment of her wages and in the terms and conditions of her employment.

    a. Defendant paid plaintiff lower wages than it paid similarly situated managers because of her gender.

    b. Defendant created a hostile work environment for plaintiff and discharged her because of her gender.

58. Defendant violated plaintiff's Title VII rights with malice or reckless indifference to those rights.

59. As a direct and proximate result of defendant's violation of Title VII, plaintiff suffered damages including loss of wages, benefits, humiliation, loss of enjoyment of life, and other consequential damages.

For these reasons, plaintiff asks the court to enter judgment in her favor and against defendant for equitable relief, compensatory and punitive damages, attorneys' fees, costs, and any other relief is appropriate.

## COUNT II Title VII Retaliation

60. Paragraphs 1 through 54 are incorporated as though fully stated in this Count.

61. Plaintiff filed a timely administrative charge and filed this lawsuit within 90 days of receiving her notice of right to sue.

62. Defendant discriminated and retaliated against plaintiff, in violation of Title VII, 42 U.S.C. § 2000e-3, because she participated in an investigation of discrimination and opposed conduct that she reasonably believed was unlawful under Title VII. Defendant failed to conduct a reasonable investigation of her harassment complaint and discharged her.

63. Defendant violated plaintiff's Title VII rights with malice or reckless indifference to those rights.

64. As a direct and proximate result of defendant's violation of Title VII, plaintiff has and will continue to suffer damages including loss of wages, benefits, humiliation, loss of enjoyment of life, and other consequential damages.

For these reasons, plaintiff asks the court to enter judgment in her favor and against defendant for equitable relief, compensatory and punitive damages, attorneys' fees, costs, and any other relief is appropriate.

## COUNT III   Equal Pay Act

65. Paragraphs 1 through 54 are incorporated as though fully stated in this Count.

66. Defendant is an employer under the Equal Pay Act, 29 U.S.C. § 203(d) and had, while it employed plaintiff, employees subject to the provision of 29 U.S.C. § 203(d).

67. At all times while employed by defendant, plaintiff was an employee under the Equal Pay Act, 29 U.S.C. § 203 (e).

68. Defendant violated the Equal Pay Act by paying plaintiff less than it paid male managers for performing work requiring equal skill, effort, and responsibility under similar working conditions.

69. The male employees to whom defendant paid more money than it paid plaintiff worked in a single establishment with plaintiff because of the centralized control exercised over employment decisions that governed employment decisions including hiring, firing, and compensation. Control over these decisions was made at a District or higher level. The male employees worked in the same "District" as plaintiff.

70. As a direct and proximate of defendant's violation of the Equal Pay Act, plaintiff was harmed.

9

71. Defendant's conduct was willful.

For these reasons, plaintiff asks the court to enter judgment in her favor and against defendant in an amount to be established at trial for the appropriate amount of backpay, liquidated damages, attorneys' fees, costs, and such further relief as the court deems appropriate.

### COUNT IV Missouri Human Rights Act Discrimination

72. Paragraphs 1 through 54 are incorporated as though stated in this Count.

73. This action is brought under the Missouri Human Rights Act (MHRA), RSMo 213.010, et seq. (2016).

74. Plaintiff filed a timely administrative charge and filed this lawsuit within 90 days of her notice of right to sue.

75. At all times material to this case, defendant was plaintiff's employer under the MHRA.

76. Defendant discriminated against plaintiff in violation of RSMo 213.055 (2016) by creating a hostile work environment, discharging her, and paying her less money because of her gender.

77. As a direct and proximate result of defendant's violations of the MHRA, plaintiff has and will continue to suffer damages including loss of wages, benefits, humiliation, loss of enjoyment of life, and other consequential damages.

78. Defendant's violation was wilful, wanton, and malicious.

For these reasons, plaintiff asks the court to enter judgment in her favor and against defendant equitable relief, compensatory and punitive damages, attorneys' fees, costs, and any other relief is appropriate.

### COUNT V Missouri Human Rights Act Retaliation 213.070

79. Paragraphs 1 through 55 are incorporated as though stated in this Count.

80. Plaintiff filed a timely administrative charge and filed this lawsuit within 90 days of her notice of right to sue.

81. Defendant discriminated and retaliated against plaintiff because of her opposition to acts made unlawful under the MHRA and her participation in defendant's sex discrimination investigation, in violation of RSMo 213.070 (2016), by failing to conduct a reasonable investigation of her harassment complaint and by discharging her.

82. Defendant's violation of the MHRA was wilful, wanton, and malicious.

83. As a direct and proximate result of defendant's violation of the MHRA, plaintiff has and will continue to suffer damages including loss of wages, benefits, humiliation, loss of enjoyment of life, and other consequential damages.

For these reasons, plaintiff asks the court to enter judgment in her favor and against defendant for equitable relief, compensatory and punitive damages, attorneys' fees, costs, and any other relief is appropriate.

/ s/ Ferne P. Wolf
Ferne P. Wolf #29326 (MO)
fw@silversteinwolf.com
SilversteinWolf, LLC
530 Maryville Centre Drive, Suite 460
St. Louis, MO 63141
314 744-4010/314 744-4026 (fax)